**92**

UNITED STATES of America

v.

Jay L. GIBSON, Defendant.

Crim. No. 87–311 SSH.

United States District Court,
District of Columbia.

Nov. 24, 1987.

Asst. U.S. Atty. Theodore Shmanda, Washington, D.C., for plaintiff.

Richard Huber, Washington, D.C., for defendant.

Allen N. Brunwasser, Pittsburgh, Pa., pro hac vice.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

The Court has reflected at considerable length on the progress and posture of this case. While the Court is reluctant to deprive defendant Gibson of his first choice as defense counsel, the Court concludes that it must revoke the *pro hac vice* appearance of Allen N. Brunwasser.

### Background

This is a simple case. There is one defendant; there is a one-count indictment. Defendant is charged with the possession of cocaine with the intent to distribute it. As the Court now sees the case, there are basically only two questions to be resolved—one by the Court and one by a jury. The Court must decide whether the search for, and the seizure of, the cocaine were constitutionally permissible. A jury must decide whether defendant possessed the cocaine with an intent to distribute it.

The criminal complaint was filed on June 24, 1987, the day after defendant was arrested. A local attorney, Richard Huber, initially represented Gibson. On the same date, Mr. Brunwasser, a member of the Bar of Pennsylvania (but not of the District of Columbia), entered his appearance for defendant.

On July 8, 1987, what was designated in part as a petition for a writ of habeas corpus was filed in this court as Civil Action No. 87–1821. While that pleading purported to be a *pro se* document, it is apparent that it was prepared by an attorney. The Court concludes that it was authored by Mr. Brunwasser, an attorney who lives and practices in Pittsburgh. Its purpose apparently was somehow to prevent the indictment of Gibson, for Gibson was in no

one's custody.[1] That case randomly was assigned to Judge Harold H. Greene. Before it could be given any consideration by Judge Greene, the indictment in this case was returned (on July 16, 1987). The criminal case was randomly assigned to the undersigned. The civil action thereafter was reassigned to the undersigned.

The Court has extended every courtesy to Mr. Brunwasser. At the arraignment on July 27, 1987, Mr. Brunwasser's request to appear *pro hac vice* was granted. By Order dated September 15, 1987, the cases were consolidated; Mr. Huber's motion to withdraw was formally granted; and the Court waived Local Rule 104 so that Mr. Brunwasser could be the sole defense counsel.[2]

The Court scheduled a status call for September 18, 1987. For reasons which are set forth elsewhere (*see* the Court's Order dated September 22), Mr. Brunwasser declined to attend (defendant did come from Pittsburgh and was present).[3] The Court had no desire to initiate a contempt proceeding. *Cf. Jessup v. Clark*, 490 F.2d 1068 (3d Cir.1973) (reversing a summary holding of Mr. Brunwasser in contempt for failure to attend another court proceeding). Instead, the Court (as part of its September 22 Order, which confirmed an oral ruling made at the September 18 status call) vacated its prior waiver of Local Rule 104,

thus again requiring the participation of local counsel. Meanwhile, defendant engaged Jeffrey Jacobovitz as local counsel; he entered his appearance on September 18.

A rescheduled status call was held on September 30. Defendant and Messrs. Brunwasser and Jacobovitz were present. In then setting a hearing date on the motion to suppress, the Court offered Mr. Brunwasser his choice as to a day of the week and a time of day so as to accommodate his travel from and to Pittsburgh.[4] The suppression hearing was scheduled for 1:30 p.m. on November 6. (*See* this Court's Order of October 9.) That date was considerably later than the Court would have desired, but was decided upon based upon the protestations of Mr. Brunwasser—a single practitioner—that the demands of other cases necessitated such a delay.

The suppression hearing commenced on November 6. Mr. Brunwasser began by requesting a continuance, which was denied, and by making inappropriate and unwarranted personal attacks upon the Assistant United States Attorney assigned to the case. The AUSA noted that despite his "open file" policy, Mr. Brunwasser has never sought discovery.[5] The first witness, an Amtrak police officer, was called. Normally, his direct testimony would have been

1. Quite incongruously, the defendant in the purported habeas corpus action was Darren B. Wolpert, a Special Agent of the Drug Enforcement Administration who participated in defendant's arrest.

2. In Mr. Huber's motion to withdraw, he stated in part:

   I have told Defendant Gibson that the matters involved in this case are serious and that he must retain local counsel to assist him and he is apparently attempting to do so.

3. The procedural pecularities of this case have caused the files to be somewhat in disarray. The extraordinary consolidation of a civil case and a criminal case is not tolerated well by the court's computer. For that reason, the Court stated clearly in its September 15 Order: "All further pleadings in the consolidated case of Criminal No. 87–311 and Civil Action No. 87–1821 shall be filed under Criminal No. 87–311." Nonetheless, defendant has made a subsequent filing bearing only the civil action number. Additionally complicating the filing situation is the fact that Messrs. Gibson and Brunwasser have

filed two appeals (Court of Appeals' Cases No. 87–3083 and 87–5309). (By Order dated October 9, this Court concluded in part that those appeals did not divest this Court of jurisdiction over this case; by Order dated November 16, this Court dismissed the superfluous civil action.) Neither of this Court's jackets is complete.

4. The formal Motion To Suppress Evidence was filed (bearing the civil action number) on October 23. It purports to be a submission by defendant Gibson alone, but again the Court concludes that it was prepared by Mr. Brunwasser. The fact that it was signed by neither counsel reflects an effort by Mr. Brunwasser to circumvent the Court's insistence on compliance with Local Rule 104.

5. It was learned later, as discussed below, that local counsel has been denied "authority to prepare discovery or any other matter in the case." (Ex. A, p. 3.)

adduced in less than 15 minutes. It took nearly two hours, by virtue of a series of lengthy, meritless objections by Mr. Brunwasser (interspersed with a number of unaccepted invitations by Mr. Brunwasser for the Court to order him to stop objecting).

Local counsel, Mr. Jacobovitz, was present at the hearing but played no role in the presentation of evidence. He had a jury deliberating in another case. When the direct testimony of the first witness finally was concluded, the Court was advised that Mr. Jacobovitz's jury had reached its verdicts. Prior to leaving for the other courtroom, Mr. Jacobovitz addressed the Court for the first time. He moved for leave to withdraw. A copy of the transcript of what was said between then and the taking of a brief recess is attached as Exhibit A. (Mr. Shmanda was the Assistant United States Attorney.) It is clear that local counsel has no authority and plays no role in the case other than being present in court. As that portion of the transcript reflects, Mr. Brunwasser again sought a continuance prior to beginning cross-examination. That request was denied.

After the recess, Mr. Brunwasser commenced his cross-examination of the first witness. By approximately 5:15 p.m., that cross-examination had not been completed. Had local counsel been handling the matter, the entire suppression hearing undoubtedly would have been completed. Had existing local counsel been given any authority, the Court could have continued sitting to permit completion of at least the first witness' testimony. Instead, the Court felt obliged to adjourn so that Mr. Brunwasser could catch his 5:50 p.m. flight back to Pittsburgh.[6] Prior to departing, Mr. Brunwasser stated that the press of other cases would make it impossible for him to resume the suppression hearing until December.

---

**6.** Mr. Brunwasser stated that that was the last flight to Pittsburgh, and that he did not want to

*Present Posture and Ruling*

■ It is now five months since defendant was arrested and more than four months since he was indicted. In addition to the two appeals which have been filed (referred to in n. 3, *supra*), Messrs. Gibson and Brunwasser have filed in the Court of Appeals a *PETITION FOR WRIT OF MANDAMUS PROHIBITION AND EXTRAORDINARY RELIEF PLUS EXERCISE OF THE COURT'S SUPERVISORY AUTHORITY IN RE SEPTEMBER 14, 1987, SEPTEMBER 18, 1987 AND SEPTEMBER 22, 1987 ORDERS OF DISTRICT JUDGE STANLEY S. HARRIS WHICH ORDERS ARE FILED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA AT C.A. 87–1821 AND CR. 87–311.* (D.C.Cir. Case No. 87–5309.) The Court cannot read Mr. Brunwasser's mind, and would be reluctant to conclude that he seeks obfuscation and delay. That, however, is what has occurred. Similarly, the Court does not question Mr. Brunwasser's legal ability. However, it has become apparent that defendant's representation by a sole practitioner who is located hundreds of miles from the District of Columbia is unacceptably delaying the resolution of this case.

The Speedy Trial Act calls for the trial of a case within 70 days of an indictment. 18 U.S.C. § 3161(c)(1). Technically, of course, the pendency of the unduly protracted suppression process has been tolling the requirements of the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F). Additionally, at the partial suppression hearing on November 6, Messrs. Gibson and Brunwasser readily asserted their waiver of defendant's right to a speedy trial. However, the Court must give recognition to the strong interests of a defendant, the Government, and the public in a speedy adjudication of guilt or innocence.

■ The Court accordingly withdraws its permission for Mr. Brunwasser to participate *pro hac vice* any further in this case. *See* Local Rule 104(d). The Nation's Capi-

---

spend the night in the District of Columbia.

tal is scarcely a frontier town with a shortage of qualified lawyers. Defendant may proceed *pro se* (which the Court discourages), or he may proceed with representation by Mr. Jacobovitz or other counsel of his choice. In any event, he must proceed henceforth without Mr. Brunwasser's representation in this Court.[7]

---

7. The withdrawal of permission for Mr. Brunwasser to appear *pro hac vice* is an interlocutory ruling which is not now appealable. *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); *see also Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). However, on the assumption that the ruling will be challenged at some point in the future, the Court has deemed it appropriate to explain its reasons in some detail.